UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WILLIAM P. BROWN,

    Plaintiff,

v.                                                              Case No. 8:23-cv-141-WFJ-AEP

CHAD CHRONISTER, SHERIFF,
HILLSBOROUGH COUNTY, *et al.*,

    Defendants.
_____/

**ORDER**

THIS CAUSE comes before the Court on Defendant Sheriff Chad Chronister's Motion to Dismiss Plaintiff's Fourth Amended Complaint with Prejudice (Doc. 75) and Defendant Hillsborough County's Motion to Dismiss Plaintiff's Fourth Amended Complaint. (Doc. 87). Mr. Brown opposes the motions. (Docs. 85, 90). Upon careful consideration, the Court grants the motions to dismiss.

**I. Background**

For purposes of this motion, the Court accepts the factual allegations in the Fourth Amended Complaint as true. Mr. Brown is a Florida prisoner who, at times relevant to this action, was a pre-trial detainee at the Faulkenberg Road Jail ("FRJ") in Hillsborough County, Florida.

On June 17, 2022, Mr. Brown requested medical attention and complained of

1

numbness on his right side, an extremely painful headache, and visual impairment in his left eye. (Doc. 61 at docket p. 15). "FRJ personnel" came to Mr. Brown's cell, but "no specific treatment was provided, and no diagnosis was made." (*Id.*).

On June 20, 2022, FRJ personnel again evaluated Mr. Brown. (*Id.*). Although he still had numbness, headache, and visual impairment, he was only given treatment for "his dry eye condition." (*Id.*). On June 22, 2022, Mr. Brown "voiced continued disarray of his extremity functions, such as no eye-hand coordination, and the spreading of numbness to the lower extremity appendages." (*Id.*). "[T]he FRJ Unit deliberately failed to provide the most basic of the required treatment or diagnosis protocols . . . ." (*Id.* at docket p. 16).

On June 25, 2022, Mr. Brown at least twice told a "patrolling officer" that he needed "urgent medical care." (*Id.*). The "patrolling officer" initially ignored Mr. Brown's requests but called for "emergency medical assistance" after Mr. Brown "collapsed on the floor . . . ." (*Id.*). Mr. Brown was taken to the hospital, where he was diagnosed as having suffered a stroke for which he needed surgery. (*Id.*). The stroke caused brain damage which left Mr. Brown with a "partial loss of the ability to speak or comprehend speech . . . ." (*Id.*). He also suffers from paralysis, depression, and anxiety and is bound to a wheelchair. (*Id.* at docket p. 19).

Mr. Brown sues Hillsborough County ("County") for violating his rights under the Fourteenth Amendment. (*Id.* at docket pp. 17-19). He asserts that the deputies and "personnel" at FRJ were agents of the County and deliberately indifferent to his serious medical needs. (*Id.* at docket p. 17). He states it was obvious to even a layperson that he "was

suffering from several serious medical needs[,]" and "the officers and responders were required to transport [him] . . . to the emergency department to be treated by competent specialists or physicians." (*Id*. at docket p. 18). However, he was not timely sent to the emergency department because "FRJ has a pattern and practice of failing to provide inmates with necessary outside medical intervention in order to save costs." (*Id*.). He contends that "the Sheriff and the County" have "full knowledge" of this pattern and practice. (*Id*.).

Mr. Brown also sues Sheriff Chronister in his official capacity. (*Id*. at docket pp. 19-22). He contends that Sheriff Chronister is the policymaker for the County concerning jail facilities, and the County, through Sheriff Chronister, had a duty to train the officers at FRJ on handling detainees' "emergency health situations" but failed to do so. (*Id*.). He alleges that the County and Sheriff Chronister knew that FRJ "did not have enough senior staff members training . . . new officers" and knew "inexperienced officers" worked at FRJ. (*Id*. at docket p. 20). He also alleges the County "had a widespread practice or custom of failing to train its officers" how to respond when a detainee has an "emergency health situation . . . ." (*Id*.).

The County moves to dismiss, arguing that (1) the Fourth Amended Complaint fails to state a claim against the County, and (2) the County and the Sheriff are two separate entities, the Sheriff has the authority and obligation to administer FRJ, and the County is not responsible for the Sheriff's actions. (Doc. 87). Sheriff Chronister also moves to dismiss, arguing that the Fourth Amended Complaint (1) fails to state a claim for municipal liability under *Monell v. Dep't. of Social Services*, 436 U.S. 658 (1978), and (2) fails to allege an

3

underlying constitutional violation for deliberate indifference to Mr. Brown's serious medical needs. (Doc. 75).

## II. Standard of Review

A complaint withstands dismissal under Federal Rule of Civil Procedure 12(b)(6) if the alleged facts state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard does not require detailed factual allegations but demands more than an unadorned accusation. *Id*. All facts are accepted as true and viewed in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Consideration should be limited "to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (citations omitted).

## III. Analysis

A. Whether the County is a proper party to this action

The County argues that it should be dismissed from this action because it is a "separate and independent" entity from the Sheriff, who has the sole "authority to administer FRJ and its staff[.]" (Doc. 87 at docket pp. 3-4). Thus, "the County is [not] responsible for the acts and omissions of the Sheriff and the Sheriff's Office." (*Id*. at docket p. 4).

The County has not established that it bears no responsibility for Sheriff Chronister. It primarily relies on *Manders v. Lee*, 338 F.3d 1304 (11th Cir. 2003) (*Id*. at docket pp. 3-4). But *Manders* does not control here because its decision was based on Georgia law. *See Scruggs v.*

4

*Lee*, 256 F. App'x 229, 231 (11th Cir. 2007) ("In *Manders*, we examined Georgia law and held that Clinch County Sheriff Peterson was entitled to Eleventh Amendment immunity as an 'arm of the State' when he established and executed a use-of-force policy at the jail." (citing *Manders*, 338 F. 3d at 1328)). When considering Florida law, the Eleventh Circuit has found that "[w]hen, as here, the defendant is the county sheriff, the suit is effectively an action against the governmental entity he represents—in this case Monroe County." *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1115 (11th Cir. 2005). And in *Lucas v. O'Loughlin*, 831 F. 2d 232 (11th Cir. 1987), the Eleventh Circuit concluded that the act of a Florida sheriff was the act of the county where county funds paid the Sheriff's and his deputies' salaries and the expenses of operating the jail, even though the Sheriff was elected through state law. *Id*. at 235 ("Although elected by virtue of state law, he was elected to serve the county as sheriff. In that capacity, he had absolute authority over the appointment and control of his deputies. His and their salaries were paid by local taxation and according to a budget approved by the county commissioners. We conclude, therefore, that his act was the act of St. Johns County. The trial court erred in dismissing the county as a defendant."). Thus, at this stage of the proceedings, the Court has no information warranting dismissal of the County because it is not responsible for the actions of Sheriff Chronister.

    B. The Fourth Amended Complaint fails to state a claim on which relief may be granted

Mr. Brown brings a claim under 42 U.S.C. § 1983 against the County and Sheriff

Chronister in his official capacity under *Monell*.[1] The Supreme Court severely restricts municipality liability under § 1983. *See Monell*, 436 U.S. at 694; *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). For a municipality to be held liable, it must actually be responsible for the unconstitutional acts, not simply under a theory of respondeat superior. *See Marsh v. Butler Cty.*, 268 F. 3d 1014, 1027 (11th Cir. 2001). To state a claim against a municipality, the actions of the municipality must rise to the level of a custom or official policy, or the municipality must tacitly authorize the actions or display deliberate indifference to alleged misconduct. *See Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987).

Mr. Brown alleges that the County and Sheriff Chronister know that FRJ "has a pattern and practice of failing to provide inmates with necessary outside medical intervention in order to save costs." (Doc. 61 at docket p. 18). But Mr. Brown alleges no facts to support this conclusory assertion that such a practice exists and that it caused his injuries. *See, e.g., Coley v. Mason*, 2010 WL 3855224, at *4 (M.D. Ga. Sept. 8, 2010), *report and recommendation adopted sub nom. Coley v. Smith*, 2010 WL 3851713 (M.D. Ga. Sept. 24, 2010) ("conclusory and unsupported allegations [are] insufficient to state a viable cause of action under 42 U.S.C. § 1983"); *Winslow v. Prison Health Servs.*, 406 F. App'x 671, 674 (3d Cir. 2011) ("[T]he naked assertion that Defendants considered cost in treating [Plaintiff's] hernia does not suffice to state a claim for deliberate indifference, as prisoners do not have a constitutional right to limitless medical care, free of the cost constraints under which law-abiding citizens receive

---

[1] As discussed above, the suit against Sheriff Chronister in his official capacity is effectively a suit against the governmental entity he represents.

6

treatment."); *Craig v. Floyd County Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011). ("[A] pattern of similar constitutional violations is ordinarily necessary" to impose liability on a municipality, and "[p]roof of a single incident of unconstitutional activity" is insufficient.") (citations omitted); *McClure v. Hyers*, 2020 WL 5649332, at *9 n.8 (S.D. Ga. Sept. 1, 2020), *report and recommendation adopted*, 2020 WL 5648203 (S.D. Ga. Sept. 22, 2020) ("Plaintiff's vague and generalized allegation that Defendants make medical care decisions based on cost concerns is insufficient to constitute a discernible policy, custom, or practice . . . ."). Thus, Mr. Brown's claim that the failure to adequately treat him was motivated by the goal to save money will be dismissed.

As for Mr. Brown's failure to train claim, a municipality may be liable upon a "failure to train or supervise" theory "only where the municipality inadequately trains or supervises its employees, this failure to train or supervise is a city policy, and that city policy causes the employees to violate a citizen's constitutional rights." *Gold v. City of Miami*, 151 F.3d 1346, 1349 (11th Cir. 1998). A plaintiff "may prove a city policy by showing that the municipality's failure to train evidences a 'deliberate indifference' to the rights of its inhabitants." *Id.* (citation omitted). To do so, "a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action," such as "a history of widespread prior abuse." *Id.* (citations omitted). To state a claim for failure to train, Mr. Brown must plead facts sufficient to support a plausible inference that the County and Sheriff Chronister knew that a pattern of violations existed but failed to provide adequate training or that the likelihood of a

7

constitutional violation was so high that they were on notice of the need for training yet failed to provide that training. *Lewis v. City of W. Palm Beach, Fla.*, 561 F.3d 1288, 1293 (11th Cir. 2009).

Even assuming Mr. Brown's constitutional rights were violated, the Fourth Amended Complaint lacks allegations of a custom or policy constituting deliberate indifference to the rights enshrined in the Fourteenth Amendment. Mr. Brown alleges no prior incident where prison officials at FRJ failed to respond to "incarcerated inmates' emergency health episodes . . . ." (Doc. 61 at docket p. 21). The single incident where prison officials allegedly failed to sufficiently respond to Mr. Brown's requests for urgent medical care is not enough.[2] *See Denham v. Corizon Health, Inc.*, 675 F. App'x 935, 942-43 (11th Cir. Jan. 13, 2017) (per curiam) (finding that two prior incidents are not enough to support a failure to train theory against a county); *Keith v. DeKalb Cty., Ga.*, 749 F.3d 1034, 1053 (11th Cir. 2014) (one prior incident insufficient).

Mr. Brown asserts the need for training was obvious. (Doc. 61 at docket p. 21). As noted by the U.S. Supreme Court, "in a narrow range of circumstances, a pattern of similar violations might not be necessary to show deliberate indifference." *Connick v. Thompson*, 563 U.S. 51, 63 (2011) (citation and quotation marks omitted). This may exist where "the need for more or different training is so obvious, and the inadequacy so likely to result in the

---

[2] Mr. Brown's allegations show that there was only one day, June 25, 2022, the day he had a stroke, on which security personnel allegedly ignored his requests for medical attention. (Doc. 61 at docket p. 16). Medical personnel evaluated Mr. Brown on the other days he complained of his medical issues (June 17, 20, and 22, 2022). (*Id.* at docket pp. 15-16).

8

violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Canton*, 489 U.S. at 390. The Court in *Canton* looked to deadly force training as an example:

> [C]ity policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons. The city has armed its officers with firearms, in part to allow them to accomplish this task. Thus, the need to train officers in the constitutional limitations on the use of deadly force...can be said to be "so obvious," that failure to do so could properly be characterized as "deliberate indifference" to constitutional rights.

*Id*. at 390 n.10.

In the Eleventh Circuit, a "single instance of unconstitutional conduct can create *Monell* liability only when proof of the incident includes proof that it was caused by an existing unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *Martin v. City of Macon Ga.*, 702 F. App'x 941, 944 (11th Cir. 2017) (citation and quotation marks omitted); *see also Denham*, 675 F. App'x at 942 (deciding not to extend single-incident theory to situation not analogous to deadly force); *Keith*, 749 F.3d at 1053 n.56 (same); *Gold*, 151 F.3d at 1352 (same).

The Court finds that, as with *Martin*, *Denham*, and *Gold*, the allegations here "fall[ ] far short of the kind of 'obvious' need for training that would support a finding of deliberate indifference to constitutional rights on the part of the city." *Gold*, 151 F.3d at 1352. Thus, Mr. Brown's failure to train claim will be dismissed.

In sum, because the Fourth Amended Complaint fails to set forth facts that render Mr. Brown's entitlement to relief plausible, *see Iqbal*, 556 U.S. at 678, it will be dismissed with

9

prejudice.[3]

Accordingly:

1. Sheriff Chad Chronister's Motion to Dismiss Plaintiff's Fourth Amended Complaint with Prejudice (Doc. 75) is **GRANTED**. Hillsborough County's Motion to Dismiss Plaintiff's Fourth Amended Complaint (Doc. 87) is **GRANTED** to the extent that it argues the Fourth Amended Complaint fails to state a claim upon which relief can be granted. Mr. Brown's Fourth Amended Complaint (Doc. 61) is **DISMISSED WITH PREJUDICE**.

2. The Clerk is directed to enter Judgment against Mr. Brown and close this case.

ORDERED in Tampa, Florida, on March 24, 2025.

WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE

SA: sfc
Copies to: Counsel of Record
　　　　　William P. Brown, *pro se*

---

[3] The Court granted Mr. Brown four opportunities to amend his initial complaint.